Ms. Mariana Paula Noli, Esq.,
CA State Bar No. 247369
mail@noli-ipsolutions.com

NOLI IP SOLUTIONS, P.C.
1902 Wright Place, Suite 200
Carlsbad, California 92008
Telephone: (442) 224-7490
Facsimile: (760) 859-3944

Attorneys for Plaintiffs
MARTHA MARIA SANCHEZ QUIROZ
DON CLEMENTE, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARTHA MARIA SANCHEZ QUIROZ**, a Mexican individual, **DON CLEMENTE INC.**, a Texas Corporation<br><br>　　　　　　　　　Plaintiffs,<br>v.<br>**LILIA FLORES**, a California resident, **JOHN AND JANE DOES 1-10**.<br>　　　　　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br>(1) **Federal Trademark Infringement, 15 U.S.C. § 1114(1);**<br>(2) **Federal Unfair Competition, 15 U.S.C. §1125(a)(1)(a);**<br>(3) **Federal Trademark Dilution, 15 U.S.C. § 1125(c);**<br>(4) **State Trademark Dilution and Injury to Business Reputation;**<br>(5) **Common Law Trademark Infringement and California Unfair Competition, Cal. Bus. & Prof. Code § 17200;**<br>(6) **Preliminary and Permanent Injunction Against Defendant** |

　　　**MARTHA MARIA SANCHEZ QUIROZ**, an individual residing in Mexico, and **DON CLEMENTE, INC.**, a Texas Corporation (Plaintiffs), v. **LILIA FLORES**, an individual residing in San Diego, California ("Defendant"), and **JOHN AND JANE DOES 1-10** (Defendants). This is a Complaint for Trademark Infringement, Unfair

Competition, Trademark Dilution, and Related Claims – Injunctive Relief and Damages.

## INTRODUCTION

1. This is an action at law and in equity for trademark infringement, unfair competition, dilution, and injury to business reputation, arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. ("Lanham Act"); the Anti-Dilution laws of California Business and Professional Code and the common law.

2. Defendant is offering for sale and selling bingo cards, prints and board games using identical and confusing similar reproductions of the Plaintiffs' federally registered trademarks and trade dresses identified in **EXHIBIT A** (hereinafter referred to as the "LOTERIA Marks"). Plaintiffs do not manufacture Defendant's board games and bingo cards, nor is Defendant connected, licensed or affiliated with, or authorized by, Plaintiffs in any way. Defendant's merchandise causes confusion and deceives consumers and the public regarding its source, and its merchandise dilutes and tarnishes the distinctive quality of the LOTERIA Marks. All the claims asserted therein arise out of the Defendant's actions that cause trademark infringement and trademark dilution.

**ORIGINAL JURISDICTION AND VENUE OVER LANHAM ACT CLAIMS**

3. This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. §1121, and under 28 U.S.C. §§1331 and 1338. This Court has jurisdiction over Plaintiffs related state and common law claims pursuant to 28 U.S.C. §§1338 and 1367.

4. This Court has personal jurisdiction over Defendant because Defendant is an individual residing in San Diego, California. Defendant is the owner of a business operating as Mi Casa as Mi Casa in Old Town, San Diego and its principal place of business is 2448 San Diego Ave., Suite A, San Diego, California 92110.

5. Furthermore, Defendant has offered for sale and/or sold infringing merchandise within this State sufficient to permit the exercise of personal jurisdiction.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

## THE PARTIES

7. Plaintiff **MARTHA MARIA SANCHEZ QUIROZ** is an individual citizen of Mexico with her residence and principal place of business in Queretaro, Mexico. Plaintiff **DON CLEMENTE, INC**. is a U.S. Corporation, with its principal place of business located in San Antonio, Texas.

8. According to the information on the Defendant's website, and information offered by the **Old Town San Diego Chamber of Commerce**, Defendant **LILIA FLORES** is operating a business under Mi Casa es Mi Casa under the laws of the state of California with its principal place of business at **2448 San Diego Ave., Suite A, San Diego, CA 92110**.

## FACTS COMMON TO ALL THE CLAIMS FOR RELIEF

9. The Mexican style bingo card game known under the LOTERIA® brand is a traditional board game of chance that uses a deck of fifty-four (54) distinctive well-known playing cards with images and wording. Each playing card has a specific image, number, and name. This playing card game became popular in the Mexican culture a long time and then expanded to the rest of the world, where it is well-known and played not only within the Mexican communities but also in other communities.

10. Plaintiffs' predecessors in interest began publishing this board game and fifty-four specific playing cards at least at early as 1887. Don Clemente Jacques created these fifty-four iconic playing cards, images, and exact wording, which become famous and unique in Mexico first, and then in the United States of America and the rest of the world. There were and have been other playing cards created, but none became as popular as the ones created by Clemente Jacques. Plaintiffs are the intellectual property rights owners, acquired the rights from the original creator Clemente Jacques. Plaintiffs are the legitimate manufacturers of the famous Mexican style bingo card games, and they are engaged in, among other things, the creation and licensing of the exceedingly popular LOTERIA® bingo card board games. Please see attached as **<u>EXHIBIT B</u>**. Plaintiffs' business encompasses the production, sale, and licensing of their famous

LOTERIA® brand not only for board games and bingo playing cards, but also for footwear, clothing, apparel, kitchenware and other products and services, all of which prominently display and/or are offered in connection with one or more of Plaintiffs' famous, internationally-recognized, federally-registered trademarks and trade dresses. Plaintiffs MARTHA MARIA SANCHEZ QUIROZ and DON CLEMENTE, INC. are the rightful owners of the intellectual property rights to LOTERIA® brand, including all the trademark and trade dress registration certificates.

11. Among Plaintiffs' various registered LOTERIA trademarks are the following: (1) US Registration No. 2,868,962; (2) US Registration No. 2,980,462; (3) US Registration No. 2,839,906; (4) US Registration No. 2,959,058, to name a few.

12. Plaintiffs' LOTERIA-branded products and services have achieved great success. It was thanks to Plaintiffs' marketing efforts and investments that the US consuming public has come to identify Plaintiffs as the source of the Mexican style bingo cards, board games, apparel and other related products and services sold under the LOTERIA Marks.

## DEFENDANT'S UNLAWFUL ACTIVITIES

13. On information and belief, Defendant is marketing, offering for sale, selling, and distributing bingo cards, board games, playing cards, stickers, clothing, identified as LOTERIA (the "Offending Loteria Products") using an identical or almost identical reproduction of the LOTERIA Marks, as displayed in **EXHIBIT C**.

14. On information and belief, Defendant was familiar with the LOTERIA Marks when she commenced offering for sale and selling the Offending Loteria Products.

15. On information and belief, Defendant intentionally identified the Offending Loteria Products to mislead and deceive consumers into believing that such products were manufactured, authorized, sponsored, approved, or licensed by Plaintiffs.

16. The Offending Loteria Products distributed, offered for sale, and/or sold by Defendant are not manufactured by Plaintiffs, nor is Defendant licensed, authorized,

sponsored, endorsed, or approved by Plaintiffs to manufacture, distribute, offer for sale and/or sell board games and bingo playing cards using any of the LOTERIA Marks.

17. The LOTERIA Marks have been used extensively and continuously by Clemente Jacques, Plaintiffs' predecessors in interest and Plaintiffs for centuries, and had become famous, long before Defendant began her unauthorized use of the LOTERIA Marks in connection with efforts to promote and sell the Offending Loteria Products.

18. The Offending Loteria Products sold by Defendant compete directly with goods manufactured and sold by Plaintiffs and their business partners, and are sold through **overlapping channels of trade, mainly Latin stores and Mexican markets targeting Latino population in the United States of America**. (see **EXHIBIT D**).

19. Defendant's use of reproductions of the LOTERIA Marks is likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that the Offending Loteria Products sold by the Defendant is manufactured by, authorized by, sponsored by, approved by, licensed by, or associated with Plaintiffs, which it is not.

20. Defendant's activities are likely to cause confusion because, inter alia, prospective purchasers, and others viewing the Offending Loteria Products at the point of sale are likely – due to Defendant's use of the LOTERIA Marks – to mistakenly attribute the products to Plaintiffs. This is particularly damaging with respect to those people who perceive a defect or lack of quality in Defendant's products. By causing such a likelihood of confusion, mistake, and deception, Defendant is inflicting irreparable harm to the goodwill symbolized by the LOTERIA Marks and the reputation for quality that they embody.

21. On information and belief, Defendant knowingly, willfully, intentionally, and maliciously adopted and used confusingly similar reproductions of the LOTERIA Marks, as proved by Defendant's refusal to desist from this infringing activity or settle this matter notwithstanding our multiple requests. Not only was the Defendant on notice because of the registration of Plaintiffs' marks but Defendant Lilia Flores was put on

1  actual notice as well, since she received multiple warnings from our clients, including
2  a formal cease and desist letter from our law office. See **EXHIBIT E**.

3  22. On November 2, 2023, Plaintiffs discovered that Defendant was offering for sale
4  and selling the Offending Loteria Products. After conducting due diligence, our law
5  firm sent on behalf of our clients a cease-and-desist letter dated January 16, 2024,
6  requesting Defendant to immediately cease and desist from any infringing actions. As
7  shown in **EXHIBIT E**, this letter was also sent by USPS certified mail which was
8  delivered on January 18, 2024. Our firm also sent a copy of the cease-and-desist letter
9  to the **Old Town San Diego Chamber of Commerce**, which was also delivered on
10 January 18, 2024.

11 23. On January 16, 2024, the Old Town San Diego Chamber of Commerce confirmed
12 receipt of the copy of our cease-and-desist letter sent to Defendant indicating that the
13 Chamber of Commerce does not sell any merchandise. On January 18, 2024, we
14 received a follow email communication from the Old Town San Diego Chamber of
15 Commerce providing us with the contact information of the business owner of record
16 as Lilia Flores. During the January 2024-July 2024 period, we have followed up with
17 Defendant, but we did not receive any communications from Defendant, leaving us no
18 choice but to prepare and file this complaint for infringement and dilution of our clients'
19 trademarks and intellectual property rights. See **EXHIBIT F**.

20 24. Indeed, notwithstanding our cease-and-desist letter and attempts to settle this
21 dispute outside of court, Defendant continued to ignore our requests and continues sell
22 Offending Loteria Products to date.

23 25. Until the Court issues an injunction, Defendant will continue to make profits by
24 free riding on Plaintiffs' goodwill. We have reason to believe that this Offending Loteria
25 Products sold under LOTERIA® brand have been offered for sale for a few years as
26 displayed on the Defendant's website at the Chamber of Commerce's portal.

27 26. As a result of our investigation and as evidenced above, Defendant made and will
28 continue to make substantial profits, while Plaintiffs suffered and will continue to suffer

Complaint for Federal Trademark Infringement and Trademark Dilution

irreparable damages unless Defendant is permanently enjoined from continuing to sell the Offending Loteria Products.

## FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement)

27. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 26.

28. Defendant's use of confusingly similar imitations of the LOTERIA Marks causes confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods are manufactured or distributed by Plaintiffs, or associated or connected with Plaintiffs, or have the sponsorship, endorsement, or approval of Plaintiffs. As shown in **EXHIBIT C**, Defendant sold and continues to sell lacking a restraining order from this Court, board game cards representing at least one identical image of the Plaintiffs registered trademarks.

29. Defendant has used at least one mark confusingly similar to one or more of Plaintiffs' federally registered marks in violation of 15 U.S.C. §1114, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiffs' goodwill and reputation as symbolized by the federally registered LOTERIA Marks, for which Plaintiffs have no adequate remedy at law.

30. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiffs federally registered LOTERIA Marks to Plaintiffs great and irreparable injury. Defendant sold and continues to offer for sale a bingo playing card game under the LOTERIA® brand with images with almost identical or confusing similar to the ones protected by trademark registration in the United States. After several requests to cease and desist the unauthorized use of the LOTERIA Marks by Plaintiffs alleging trademark infringement and dilution, Defendant sold more Offending Loteria Products using Plaintiffs' trademarks without authorization.

31. Upon information and belief, by her acts, Defendant has made and will make substantial profits and gains to which she is not in law or in equity entitled.

32. Consumers are misled about the origin of the products, and they likely confuse the Defendant's Offending Loteria Products with Plaintiffs' LOTERIA Marks and legitimate products. Plaintiffs' playing card game is a family game which targets the general population in the vast majority, mainly bilingual families, and families of Mexican descent in the US. This target is unlikely to control the origin of the product since the purpose is to have fun, honor tradition and cultural background, hence the Defendant's conduct can be highly dangerous in creating actual confusion. There is no doubt that a consumer quickly looking at the playing cards and images would associate them with Plaintiffs' LOTERIA Marks.

33. Defendant has caused and is likely to continue to cause substantial injury to the public and to Plaintiffs, and Plaintiffs are entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and other damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§1114, 1116 and 1117.

## SECOND CLAIM FOR RELIEF
## (Federal Unfair Competition)

34. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 26.

35. Defendant's use of confusingly similar imitations of the LOTERIA Marks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's Offending Loteria Products are manufactured or distributed by Plaintiffs, or are affiliated, connected, or associated with Plaintiffs or have the sponsorship, endorsement, or approval of Plaintiffs.

36. Defendant has made false representations, false descriptions, and false designations of origin of her goods in violation of 15 U.S.C. §1125(a), and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and,

additionally, injury to Plaintiffs' goodwill and reputation as symbolized by the LOTERIA Marks, for which Plaintiffs have no adequate remedy at law.

37. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the LOTERIA Marks to the great and irreparable injury to Plaintiffs.

38. Upon information and belief, by her acts, Defendant has made and will make substantial profits and gains to which she is not in law or in equity entitled.

39. Defendant's conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiffs. Plaintiffs are entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §1125,1116 and 1117.

## THIRD CLAIM FOR RELIEF
## (Federal Trademark Dilution)

40. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 26.

41. Plaintiffs have extensively and continuously promoted and used the registered LOTERIA Marks in Mexico, the United States of America and throughout the world. The LOTERIA Marks thereby had become a famous and well-known symbol of Plaintiffs' goods well before Defendant offered for sale the Offending Loteria Products complained of in this Complaint.

42. Defendant is making commercial use in commerce of at least one mark that dilutes and is likely to dilute the distinctiveness of the LOTERIA Marks by eroding the public's exclusive identification of these famous marks with Plaintiffs, tarnishing and degrading the positive associations and prestigious connotations of the marks, and otherwise lessening the capacity of the marks to identify and distinguish goods and services.

43. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the LOTERIA Marks or to cause dilution of the LOTERIA Marks, to the great and irreparable injury to Plaintiffs.

44. Upon information and belief, by her acts, Defendant has made and will make substantial profits and gains to which she is not in law or in equity entitled.

45. Defendant has caused and will continue to cause irreparable injury to Plaintiffs' goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiffs' famous and distinctive LOTERIA Marks in violation of 15 U.S.C. §1125(c). Plaintiffs therefore are entitled to injunctive relief and to Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§1125(c), 1116 and 1117.

## FOURTH CLAIM FOR RELIEF

### (State Trademark Dilution and Injury to Business Reputation)

46. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 26.

47. Plaintiffs have extensively and continuously promoted and used the federally registered LOTERIA Marks both in the United States and throughout the world, and the LOTERIA Marks have become a distinctive, famous, well-known symbol of Plaintiffs' goods and services.

48. Defendant's unauthorized use of the federally registered LOTERIA Marks dilutes and is likely to dilute the distinctiveness of Plaintiffs' LOTERIA Marks by eroding to the public's exclusive identification of these famous and well-known marks with Plaintiffs, tarnishing and degrading the positive associations and prestigious connotations of the LOTERIA Marks.

49. Defendant is causing and will continue to cause irreparable injury to Plaintiffs' goodwill and business reputation, and dilution of the distinctiveness and value of Plaintiffs' famous and distinctive LOTERIA Marks in violation of the California law.

Plaintiffs therefore are entitled to injunctive relief, damages, and costs, as well as, if appropriate, enhanced damages and reasonable attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### (Common Law Trademark Infringement and Unfair Competition)

50. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 26.

51. Defendant's acts likely to create a likelihood of confusion and cause irreparable injury to Plaintiffs unless restrained by this Court. Plaintiffs have no adequate remedy at law for this injury.

52. On information and belief, Defendant acted with full knowledge of Plaintiffs' use of, and statutory and common law rights to, the LOTERIA Marks and without regard to the likelihood of confusion of the public created by Defendant's actions.

53. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the LOTERIA Marks to the great and irreparable injury to Plaintiffs.

54. Upon information and belief, by her acts, Defendant has made and will make substantial profits and gains to which she is not in law or in equity entitled.

55. As a result of Defendant's acts, Plaintiffs have been damaged in an amount not yet determined or ascertainable. At a minimum, however, Plaintiffs are entitled to injunctive relief, to an accounting of Defendant's profits, to damages, and to costs. In light of the deliberately fraudulent and malicious continuous use of confusingly similar imitations of the LOTERIA Marks, and the need to deter Defendant from similar conduct, Plaintiffs additionally are entitled to punitive damages.

## SIXTH CLAIM FOR RELIEF

### (Preliminary and Permanent Injunction Against Defendant)

56. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1 through 26.

57. Since at least as early as November 2, 2023, Defendant wrongfully and unlawfully sold and offered for sale Offending Loteria Products, board games and bingo playing cards, representing images that infringe Plaintiffs' LOTERIA marks, create confusion of consumers in the marketplace, dilute the Plaintiffs' trademarks causing damage to Plaintiffs' sales.

58. Defendant's wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiffs as the confusion between consumer will spread and the more the Defendant's conduct will be tolerated the more the consumers will not be able to distinguish between the LOTERIA Marks and the Offending Loteria Products. The present actual confusion is *per se* an irreparable harm because it will not be possible to cancel from the consumers' mind the association of the two products even if they are not related. Plaintiffs argue that a lot of consumers already believe that Defendant's Offending Loteria Products belong to or are authorized by Plaintiffs, this is already a harm that will not be compensated by money damages alone. Each day that Defendant's conduct continues, the harm is growing, therefore the harm will be irreparable if the Court will not grant a preliminary injunction to maintain the *status quo* and avoid that Plaintiffs suffer further damages.

59. Plaintiffs have no adequate remedy at law for the injuries suffered and for the loss of profit due to the trademark infringement, dilution, and consumers' confusion. A monetary award alone would not provide an adequate remedy as any judgment that this Court will grant will be remedy for the future and Plaintiffs will need to put more efforts only to realign the consumers perception to the actual truth about the origin of the bingo card game anyway. The uniqueness of the cards and the strength of the LOTERIA brand are at risk, only an adequate and fast injunction can avoid a complete loss.

## **PRAYER FOR JUDGMENT AND RELIEF**

WHEREFORE, the Plaintiffs pray that:

1. Defendant and all of her agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority

from Defendant, or in concert or participation with Defendant, and each of them, be enjoined preliminarily and permanently, from: (a). Using any trademark, service mark, name, logo, design or source designation if any kind on or in connection with Defendant's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to, or in any way similar to the trademarks or trade dresses of Plaintiffs; (b). Using a trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Defendant's goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiffs, or are sponsored or authorized by Plaintiffs or are in any way connected or related to Plaintiffs; (c). Using any trademark, trade dress, service mark, name, logo, design, or source designation of any kind on or in connection with Defendant's goods or services that dilutes or is likely to dilute the distinctiveness of the trademarks, trade dress, service marks, names, or logos of Plaintiffs; and (d). passing off, laming off, or assisting in passing off or palming off Defendant's goods or services as those of Plaintiffs, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

 2. Defendant be ordered to recall all products bearing the LOTERIA Marks or any other confusingly similar variation thereof, which have been shipped by Defendant or under her authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Defendant;

 3. Defendant be ordered to deliver up for impoundment and for destruction all board games, playing cards, bingo cards, bags, boxes, labels, tags, signs, packages, receptables, advertising, sample books, promotional material, stationery or other materials in the possession, custody, or under control of Defendant that are found to adopt, to infringe, or to dilute any of the LOTERIA Marks or that otherwise unfairly compete with Plaintiffs and their products and services;

4. Defendant be compelled to account to Plaintiffs for any and all profits derived by Defendant from the unauthorized use of the LOTERIA Marks including the sale or distribution of Offending Loteria Products as described in this Complaint;

5. Plaintiffs be awarded all damages caused by the acts basis of this Complaint;

6. Based on Defendant's knowing and intentional use of confusingly similar imitations of the LOTERIA Marks, the damages award be trebled, and the award of Defendant's profits be enhanced as provided for by 15 U.S.C. §1117(a);

7. Defendant be required to pay to Plaintiffs the costs of this action and reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a) and the cited state statutes;

8. Based on Defendant's willful and deliberate infringement and dilution of the LOTERIA Marks, and to deter such conduct, Plaintiffs be awarded punitive damages;

9. Plaintiffs have such other and further relief as the Court may deem just.

Date: February 21, 2025        **NOLI IP SOLUTIONS P.C.**

By: */S/Mariana Paula Noli*
Mariana Paula Noli, Esq.
CA State Bar 247369
Attorney for Plaintiffs